**BRUSSELBACK v. CHICAGO JOINT STOCK LAND BANK OF CHICAGO et al.**

No. 12303.

District Court, N. D. Illinois, E. D.
Nov. 1, 1932.

J. Arthur Miller and Townley, Wild, Campbell & Clark, all of Chicago, Ill., for plaintiff.

WILKERSON, District Judge.

This case is before the court on the motion of the plaintiff for the appointment of a receiver. The application is based on the averments of the bill alone. The bill alleges that the Chicago Joint Stock Land Bank was organized under the Federal Farm Loan Act (12 USCA § 641 et seq.) with an original capital of $250,000. Subsequently, the capital was increased to $4,000,000. The bank issued bonds in excess of $42,000,000, of which the complainant owns an amount in excess of that required for jurisdictional purposes. Those bonds were secured by mortgages deposited with the registrar, pursuant to the provisions of the act.

The bill further alleges that the value of the mortgages has depreciated so that the total assets are less than $35,000,000; that the working capital has been exhausted; that there are no funds with which to pay ordinary running expenses, and that the bank has defaulted in the payment of bond interest due October 1, 1932. The Federal Farm Loan Board then declared the bank insolvent, and directed that it discontinue operations and turn over its assets to the receiver appointed by the Board.

Plaintiff's bill is based on the theory that the mortgages and other assets held under the provisions of the act as security for the bonds constitute a trust fund which should be administered in equity for the benefit of the bondholders. The suit is brought for the purpose of procuring a proper administration of the assets assigned by the bank in trust for the protection of the bondholders and to enforce the statutory stockholders' liability by appropriate assessment.

Defendants oppose the motion on the ground that by the Federal Farm Loan Act a definite method is provided for administering pledged assets and other property in case of the bank's insolvency, and that a court of equity should not take the administration of the assets out of the hands of the officers to whom it has been committed by the Farm Loan Act.

It is not denied that in view of Wheeler v. Greene, 280 U. S. 49, 50 S. Ct. 21, 74 L. Ed. 160, the creditors may maintain a suit to enforce the stockholders' liability, and that at the appropriate time a receiver may be appointed in aid of that relief.

The question here is whether or not, in view of the provisions of the Farm Loan Act, a court of equity can withdraw the custody and control of the mortgages and other assets deposited with the registrar from the statutory receiver and the registrar.

I shall not attempt to sum up at this time the circumstances leading up to the passage of the Federal Farm Loan Act, the purpose of the act, and the general plan of which the joint stock land banks form a part. It is sufficient to say that the language of the act must be interpreted with a recognition of those circumstances and with an endeavor to carry out the purpose of the act.

Attention should be directed, however, to some of the provisions of the act which must be considered in passing upon the question which has been submitted to the court.

The provision for the appointment of a statutory receiver is as follows: "Upon default of any obligation, Federal land banks and joint stock land banks may be declared insolvent and placed in the hands of a receiver by the Federal Farm Loan Board, and proceedings shall thereupon be had in accordance with the provisions of this section regarding national farm loan associations." Section 29, F. F. L. A., 12 USCA § 963, 39 Stat. 381.

The section relating to the appointment of receivers for national farm loan associations is in part as follows: "Upon receiving satisfactory evidence that any national farm loan association has failed to meet its outstanding obligations of any description the Federal Farm Loan Board may forthwith declare such association insolvent and appoint a receiver and require of him such bond and security as it deems proper * * *. Such receiver, under the direction of the Federal Farm Loan Board, shall take possession of the books, records, and assets of every description of such association, collect all debts,

dues, and claims belonging to it, and, with the approval of the Federal Farm Loan Board, or upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like approval or order, may sell all the real and personal property of such association, on such terms as the Federal Farm Loan Board or said court shall direct." Section 29, F. F. L. A., 12 USCA § 961, 39 Stat. 381.

The provision for the appointment of a registrar is as follows: "The Federal Farm Loan Board shall appoint a farm loan registrar in each land bank district to receive applications for issues of farm loan bonds and to perform such other services as are prescribed by this chapter * * *. Farm loan registrars, deputy registrars, land bank appraisers, and land bank examiners appointed under this section shall be public officials * * *." Section 3, F. F. L. A., 12 USCA § 656, 39 Stat. 361.

In section 16 of the act relating to joint stock land banks, it is provided: "Except as otherwise provided, joint-stock land banks shall have the powers of, and be subject to all the restrictions and conditions imposed on, Federal land banks by this chapter, so far as such restrictions and conditions are applicable * * *." Section 16, F. F. L. A., 12 USCA § 813, 39 Stat. 374.

Section 13 of the act as to the powers of federal land banks, to which section 16 concerning joint stock land banks relates, provides:

"Every Federal land bank shall have power, subject to the limitations and requirements of this chapter—

"First. To issue, subject to the approval of the Federal Farm Loan Board, and to sell farm loan bonds of the kinds authorized in this chapter, to buy the same for its own account, and to retire the same at or before maturity.

"Second. To invest such funds as may be in its possession in the purchase of qualified first mortgages on farm lands situated within the Federal land bank district within which it is organized or for which it is acting. * * *

"Fourth. To acquire and dispose of—

"(a) Such property, real or personal, as may be necessary or convenient for the transaction of its business, which, however, may be in part leased to others for revenue purposes.

"(b) Parcels of land acquired in satisfaction of debts or purchased at sales under judgments, decrees, or mortgages held by it. But no such bank shall hold title and possession of any real estate purchased or acquired to secure any debt due to it, for a longer period than five years, except with the special approval of the Federal Farm Loan Board in writing." Section 13, F. F. L. A., 12 USCA § 781, 39 Stat. 372.

Pertinent provisions with reference to the issuing of bonds by joint stock land banks are:

"Each joint-stock land bank organized under this chapter shall have authority to issue bonds based upon mortgages taken by it in accordance with the terms of this chapter. Such bonds shall be in form prescribed by the Federal Farm Loan Board, and it shall be stated in such bonds that such bank is organized under this subdivision of this chapter, is under Federal supervision, and operates under the provisions of this chapter." Section 16, F. F. L. A., 12 USCA § 821, 39 Stat. 374.

"Any joint-stock land bank organized and doing business under the provisions of this chapter may go into voluntary liquidation by making provision, to be approved by the Federal Farm Loan Board, for the payment of its liabilities: Provided, That such method of liquidation shall have been duly authorized by a vote of at least two-thirds of the shareholders of such joint-stock land bank at a regular meeting, or at a special meeting called for that purpose." 12 USCA § 822, 41 Stat. 691, amending Act July 17, 1916, § 16, 39 Stat. 374.

"For the purpose of assisting in any such liquidation authorized as in the preceding section provided, any Federal land bank or joint-stock land bank may, with the approval of the Federal Farm Loan Board, acquire the assets and assume the liabilities of any joint-stock land bank, and in such transaction any Federal land bank may waive the provisions of this chapter requiring such bank to acquire its loans only through national farm loan associations. * * *" 12 USCA § 823, 41 Stat. 691, 43 Stat. 1263, amending Act July 17, 1916, § 16, 39 Stat. 374.

In section 18 of this act is this provision: "Any Federal land bank, or joint-stock land bank, which shall have voted to issue farm loan bonds under this chapter, shall make written application to the Federal Farm Loan Board, through the farm loan registrar of the district, for approval of such issue. With said application said land bank shall tender to said farm loan registrar as col-

lateral security first mortgages on farm lands qualified under the provisions of section 771, sections 801–807, or sections 811–821 of this chapter, or United States Government bonds, not less in aggregate amount than the sum of the bonds proposed to be issued." Section 18, F. F. L. A., 12 USCA § 841, 39 Stat. 375.

Section 19 provides: "Whenever any farm loan registrar shall receive from the Federal Farm Loan Board notice that it has approved any issue of farm loan bonds under the provisions of sections 841–844 he shall forthwith take such steps as may be necessary, in accordance with the provisions of this chapter, to insure the prompt execution of said bonds and the delivery of the same to the land bank applying therefor." Section 19, F. F. L. A., 12 USCA § 851, 39 Stat. 376.

And in the same section is this provision: "Whenever the Federal Farm Loan Board shall approve an issue of farm loan bonds, the farm loan registrar having custody of the first mortgages and bonds tendered as collateral security for such issue of bonds shall retain in his custody those first mortgages and bonds which are to be held as collateral security, and shall return to the bank owning the same any of said mortgages and bonds which are not to be held by him as collateral security. The land bank which is to issue said farm loan bonds shall transfer to said registrar, by assignment, in trust, all first mortgages and bonds which are to be held by said registrar as collateral security, said assignment providing for the right of redemption at any time by payment as provided in this chapter and reserving the right of substitution of other mortgages qualified under sections 771 and 811–821 of this chapter. Said mortgages and bonds shall be deposited in such deposit vault or bank as the Federal Farm Loan Board shall approve, subject to the control of said registrar and in his name as trustee for the bank issuing the farm loan bonds and for the prospective holders of said farm loan bonds." Section 19, F. F. L. A., 12 USCA § 853, 39 Stat. 376.

Section 22 provides: "Whenever any Federal land bank, or joint stock land bank, shall receive any interest, amortization or other payments upon any first mortgage or bond pledged as collateral security for the issue of farm loan bonds, it shall forthwith notify the farm loan registrar of the items so received. Said registrar shall forthwith cause such payment to be duly credited upon the mortgage entitled to such credit. Whenever any such mortgage is paid in full, said registrar shall cause the same to be canceled and delivered to the proper land bank, which shall promptly satisfy and discharge the lien of record and transmit such canceled mortgage to the original maker thereof, or his heirs, administrators, executors, or assigns." Section 22, F. F. L. A., 12 USCA § 891, 39 Stat. 378.

"When any land bank shall surrender to the proper farm loan registrar any farm loan bonds of any series, canceled or uncanceled, said land bank shall be entitled to withdraw first mortgages and bonds pledged as collateral security for any of said series of farm loan bonds to an amount equal to the farm loan bonds so surrendered, and it shall be the duty of said registrar to permit and direct the delivery of such mortgages and bonds to such land bank." Section 22, F. F. L. A., 12 USCA § 894, 39 Stat. 378.

"Interest payments on hypothecated first mortgages shall be at the disposal of the land bank pledging the same, and shall be available for the payment of coupons and the interest of farm loan bonds as they become due." Section 22, F. F. L. A., 12 USCA § 895, 39 Stat. 378.

"Amortization and other payments on the principal of first mortgages held by a farm loan registrar as collateral security for the issue of farm loan bonds shall constitute a trust fund in the hands of the Federal land bank or joint stock land bank receiving the same, and shall be applied or employed as follows:

"(a) To pay off farm loan bonds issued by or in behalf of said bank as they mature.

"(b) To purchase at or below par Federal farm loan bonds.

"(c) To loan on first mortgages on farm lands within the land bank district, qualified under this chapter as collateral security for an issue of farm loan bonds.

"(d) To purchase United States Government bonds." Section 22, F. F. L. A., 12 USCA § 897, 39 Stat. 378.

"The farm loan bonds, first mortgages, United States Government bonds, or cash constituting the trust fund provided for in the preceding section, shall be forthwith deposited with the farm loan registrar as substituted collateral security in place of the sums paid on the principal of indorsed mort-

740

gages held by him in trust." Section 22, F. F. L. A., 12 USCA § 898, 39 Stat. 378.

"Every Federal land bank, or joint-stock land bank, shall notify the farm loan registrar of the disposition of all payments made on the principal of mortgages held as collateral security for an issue of farm loan bonds, and said registrar is authorized, at his discretion, to order any of such payments, or the proceeds thereof, wherever deposited or however invested, to be immediately transferred to his account as trustee aforesaid." Section 22, F. F. L. A., 12 USCA § 899, 39 Stat. 378.

■ Considering all of those provisions in their relation to each other, I have reached the conclusion that the statutory receiver, who succeeds to the powers of the bank, has authority under the control of the Federal Farm Loan Board to collect interest, amortization, or other payments on the mortgages, to enforce such mortgages by suit, to obtain judgments and decrees thereunder, to take title to lands covered by the mortgages, and to do all other things which the land bank was authorized to do in connection with such mortgages. The mortgages or other assets arising therefrom constitute a trust fund in the hands of such statutory receiver for the payment of the bonds.

■ I agree with the views expressed by Judge Kenyon in Krauthoff v. Kansas City Joint-Stock Land Bank of Kansas City et al. (C. C. A.) 31 F.(2d) 75. In my opinion a court of equity should not interfere with the statutory administration of the assets of the insolvent bank except for fraud, breach of trust or other misconduct of the kind for which a statutory receiver may be proceeded against in equity.

The situation with reference to the mortgages and other assets deposited as security for the bonds seems to me to be essentially different from that in the cases cited by counsel for plaintiff in which it was held that national bank receivers may not recover possession of pledged assets. Here both the bank and the registrar have functions to perform with reference to the mortgages and kindred assets set aside as security for the bond issue. The registrar is a public official and active duties with reference to the mortgages are imposed on the bank. The payments of the mortgages, when made to the bank, are characterized as a trust fund in the hands of the bank. Cases like Merrill v. National Bank, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640; Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779, and Schumacher v. Eastern Bank & Trust Co. (C. C. A.) 52 F.(2d) 925, are not, in my opinion, applicable to the facts disclosed by this record.

The principle on which Wheeler v. Greene, 280 U. S. 49, 50 S. Ct. 21, 74 L. Ed. 160, was decided, in my opinion, does not apply here. There the court refused to imply powers where it was plain that Congress had omitted them for a purpose from the act.

With respect to the assets deposited as security, a different question is presented. The statute in terms imposes duties on the bank with reference to the mortgages deposited with the registrar. The bank is to collect interest and principal and carry on all proceedings necessary to that end. It takes title to the land acquired in settlement of mortgage debts. The statute in terms requires statutory receivers to collect all debts due to the bank. It is urged that in sustaining the authority of the statutory receiver over the pledged assets, the court will read by implication into the statute powers which Congress did not intend to confer. On the contrary, the court in denying the authority would read out of the statute something which Congress plainly intended to include.

■ The motion for the appointment of a receiver of the assets deposited in trust for the benefit of the bondholders will be denied. Ruling will be reserved on the motion to appoint a receiver to take charge of the fund to be realized from the enforcement of stockholders' liability.